**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Johnson,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-23-02080-PHX-SPL<br><br>**ORDER** |

  Plaintiff Barbara Johnson seeks judicial review of the denial of her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 18), Defendant Commissioner of Social Security Administration's Response Brief (Doc. 22), Plaintiff's Reply Brief (Doc. 23), and the Administrative Record ("AR") (Docs. 12–17). For the following reasons, the final decision of the Commissioner will be affirmed.

**I. BACKGROUND**

  Plaintiff filed Title II Application for Social Security disability benefits on January 29, 2019, and a Title XVI Application for Supplemental Security Income on January 28, 2019, for a period of disability beginning on September 19, 2018. (AR at 22). The Social Security Administration ("SSA") denied Plaintiff's claims on March 26, 2029, and again denied it upon reconsideration on August 5, 2019. (Doc. 18 at 2). After a subsequent hearing held on November 2, 2020, the SSA again denied Plaintiff's claims. (AR at 34).

  Plaintiff appealed to the SSA Appeals Council, who denied Plaintiff's Request for

Review on October 15, 2021. (Doc. 18 at 2). Plaintiff then filed a Complaint before this Court, Case No. 2:21-cv-02144-MTL, which was remanded by stipulation on September 1, 2022. (*Id.*).

On June 20, 2023, Plaintiff appeared at a second hearing before the Administrative Law Judge ("ALJ"). (*Id.* at 3). The ALJ denied the claims again on September 5, 2023. (AR at 3246). Upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: lumbar degenerative disc disease, status-post lumbar fusion in 2018, bilateral osteoarthritis of the knees, status-post bilateral knee replacements in February and May 2020, peripheral arterial disease, ischemia of the left great toe, occlusion of the anterior of tibial artery, swelling of bilateral lower extremities post-knee replacements, deep vein thrombosis ("DVT"), congenital renal agenesis, diabetes mellitus ("DM"), obesity, asthma, chronic obstructive pulmonary disorder ("COPD"), fibromyalgia, and degenerative disc disease of the cervical spine. (AR at 3235). Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 19, 2018, through the date of this decision." (AR at 3246).

On October 4, 2023, Plaintiff filed a Complaint in this Court. (Doc. 1). Plaintiff seeks a closed-period award from September 19, 2018, through August 1, 2021, "when she obtained a job [that] accommodates her disabilities and that pays greater than SGA." (Doc. 18 at 3). Having reviewed the Administrative Record and subsequent briefs in their entirety (Docs. 18, 22, 23), the Court will discuss the pertinent evidence in addressing the issues that the parties have raised.

## II.     LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's

decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

///

### III. DISCUSSION

Plaintiff raises only one issue on appeal: whether the ALJ erred by failing to articulate clear and convincing reasons for discounting Plaintiff's symptom testimony. (Doc. 18 at 2). The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms inconsistent and unsupported by the evidence. (AR at 3239). An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citation omitted). The "clear and convincing" standard is not whether a reviewing court is convinced, but "whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

A finding that a claimant's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.").

Here, the ALJ found that the Plaintiff's impairments could be reasonably expected to cause the symptoms alleged, thus satisfying the first step of the ALJ's evaluation. (AR at 3239). Next, the ALJ rejected Plaintiff's testimony. (AR at 3239). Although the ALJ's statement of judgement may appear vague alone, the subsequent paragraphs explain the specific evidence that the ALJ found inconsistent with the previously described symptoms, providing clear rationale. (AR at 3240–45); *see Smart v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (finding that it is sufficient for the ALJ to cite "examples across a multi-year period contrasting [Plaintiff's] subjective pain testimony with objective medical evidence"). By stating the testimony, the evaluation of it, and the evidence used in evaluation, the ALJ made an effort to connect the discussion of medical evidence and the discussion of symptom testimony credibility, thus demonstrating that the ALJ was not arbitrarily discrediting claimant's testimony. *See Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 20 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) (requiring the ALJ to connect statements and conclusions rather than simply listing facts); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (the reviewing Court must assure that the ALJ did not "arbitrarily discredit a claimant's testimony" (citation omitted)).

For example, the ALJ found that with respect to Plaintiff's impairments,

> the evidence indicates the claimant may have suffered from impairments during the period at issue that limited the claimant in a greater manner than provided for in the residual functional capacity, however, the evidence suggests these limitations were limited in duration and did not meet durational requirements that necessitate prolonged and disabling functional limitations.

(AR at 3241). Specifically, with respect to Plaintiff's respiratory impairments, the ALJ reviewed respiratory and cardiovascular examination records revealing normal, unlabored breathing and breath sounds, no shortness of breath, and normal heart rhythm and sounds

on multiple occasions beginning in November 2018. (AR at 3240). The ALJ acknowledged that Plaintiff's knee operations resulted in expectant pain and a symptomatic limp, but that Plaintiff improved overtime and recorded to a "full range of motion, normal strength[,] and normal gait over a year after her 2nd total knee replacement." (AR at 3241). To that end, the ALJ noted that Plaintiff's left knee imaging prior to surgery "was not indicative of a condition that would require disabling limitations during the period at issue" in June 2019, and post-surgical imaging in June 2020 showed the knee replacements were in place and intact, the surrounding tissues were full, and there were no periprosthetic lucency, lucent lesions, or fractures. (AR at 3241). The ALJ detailed Plaintiff's post-surgical complications from her lumbar fusion surgery but noted that limitations from these conditions—use of a wheelchair and quad cane in February 2019, and later use of a walker due to unsteadiness, balance, and pain issues in June 2020—were in close proximity to Plaintiff's lumbar fusion surgery, total knee replacement, and reports of ischemic symptoms in her legs. (AR at 3240–42).

In finding that these conditions did not limit Plaintiff for the requisite duration, the ALJ noted that Plaintiff recovered quickly after her right knee replacement: two weeks post operatively, Plaintiff reported "doing well" and being up and around and had a normal range of motion with light swelling two weeks after that. (AR at 3242). Thus, these findings support the ALJ's determination that while Plaintiff's conditions greatly limited Plaintiff and caused her varying levels of pain, the limitations were not greater "than already provided for in the residual functional capacity." (AR at 3242). Moreover, the ALJ provided various reasons why the discussed medical evidence supported this conclusion and negated Plaintiff's medical expert's opinion that Plaintiff "would need to be off her feet with standing and/or walking no more than one hour a day." (AR at 3245). *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain." (emphasis

added)). While the ALJ found consulting physicians' opinions on Plaintiff's walking and standing limitations persuasive, the ALJ found that those limitations were associated with Plaintiff's knee replacements and other lower extremity procedures, and thus did not meet the durational requirements for the entire adjudicatory period. (AR at 3244).

The ALJ also considered statements made by claimant during the adjudicatory period in rejecting Plaintiff's testimony. In rejecting Plaintiff's testimony about her fibromyalgia, the ALJ referred to her medical provider's description of the condition as "stable" in March 2019 and her own statement in June 2019 that she is able to manage and improve her pain with medication and has had a history of the condition for over 12 years, *i.e.* outside of the durational period. (AR at 3242). Additionally, the ALJ noted several medical records throughout the adjudicatory period in which Plaintiff denied feeling increased fatigue, pain, cramping, and other symptoms at various intervals. (AR at 3242). The ALJ explained that this evidence, in conjunction with the evidence that Plaintiff has returned to work without signs of significant medical improvement, suggest that Plaintiff was capable of sedentary work during the adjudicatory period and does not indicate that Plaintiff "has impairments that created limitations that lasted 12 or more months." (AR at 3242, 3244).

With respect to Plaintiff's DVT and other vascular conditions, degenerative disc disease of the cervical spine, and osteoarthritis, the ALJ found Plaintiff's claims of long-lasting limitations refuted by extensive medical records. (AR at 3240–41). Plaintiff was hospitalized from February 21, 2019 to March 2, 2019 related to her vascular issues, but the ALJ cited subsequent records revealing that Plaintiff had recovered full muscle strength in her bilateral lower extremities; did not require walking assistance; and had no swelling or pain reported during musculoskeletal exams at various intervals from early 2019 onward. (AR at 3240–41). The ALJ also noted that MRI records of Plaintiff's degenerative disc disease of the cervical spine in November 2018 and June 2019 showed no significant change from her April 2018 imaging, which was conducted prior to the alleged disability period. (AR at 3240–41). Additionally, the ALJ noted that Plaintiff's position that her

muscle weakness and low back pain caused difficulty walking was refuted by her discharge from physical therapy due to noncompliance with her treatment plan in November 2018. (AR at 3240); *see Karabajakyan v. Berryhill*, 713 F. App'x 553, 555 (9th Cir. 2017) (citation omitted) (failure to follow a prescribed course of treatment can constitute clear and convincing reasons for discounting a claimant's credibility regarding his or her symptoms). Lastly, the ALJ found that her alleged cognitive difficulties would not limit her capabilities and found that such difficulties were inconsistent with the opinions of consulting physicians, Plaintiff's lack of regular mental health treatment, her daily work and living activities, and her denial of psychiatric symptoms on several treatment visits. (AR at 3244).

Plaintiff also argues that the ALJ did not properly consider the frequency of her medical appointments in finding her disabilities were nondurational. (Doc. 18 at 11, 15). With respect to Plaintiff's argument that her conditions required multiple medical appointments that precluded her ability to work, the ALJ questioned Plaintiff on the record during the June 20, 2023 hearing regarding why her employment and appointments could not be scheduled to accommodate each other. (AR at 3264–66); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled . . . and here [Plaintiff's] own testimony established that she was able to work occasional eight-hour shifts."). While Plaintiff asserted at the hearing that she missed multiple days per month (AR at 3264) for appointments, Plaintiff did not provide evidence that "that the frequency, scheduling, or duration of her medical appointments inhibited her ability to work on a regular and continuing basis," nor that "her appointments lasted entire workdays." *Mance v. Kijakazi*, No. 22-35697, 2023 WL 5500429, at *1 (9th Cir. Aug. 25, 2023). To the contrary, as Defendant notes in its Response, Plaintiff's Opening Brief cites to some appointments that took under an hour and could be attended on a lunch break or would not otherwise necessitate the loss of an entire or partial workday. (Doc. 22 at 14–15). Additionally, the chart included in Plaintiff's Opening Brief shows that there were several months with very

few, if any, appointments interspersed throughout the adjudicatory period. (Doc. 18 at 17–20). As such, Plaintiff failed to demonstrate that the frequency and duration of her appointments inhibited her employment ability on a continuous basis throughout the closed period. The Court finds that the ALJ did not err by not evaluating the frequency of her medical appointments.

All told, the Court finds that the ALJ provided various reasons why the medical evidence, Plaintiff's statements, and Plaintiff's subsequent return to work supported his conclusion that Plaintiff's conditions did not preclude her ability for sedentary work during the adjudicatory period. The Court thus finds the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony.

## IV.     CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of the Social Security Administration is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 14th day of March, 2025.

Honorable Steven P. Logan
United States District Judge